UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH CASTILLO,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

No. 2:16-cv-00953 CKD P

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born October 15, 1992, applied on April 26, 2011 for SSI, alleging disability beginning May 1, 2006. Administrative Transcript ("AT") 18, 249. Plaintiff alleged he was unable to work due to mental retardation. AT 109. The Social Security Administration denied this claim both initially and on reconsideration. AT 18. In a decision dated April 10, 2013, the

////

ALJ determined that plaintiff was not disabled.[1] AT 120-124. On March 15, 2014, the Appeals Council granted plaintiff's request for review and vacated the ALJ's April 2013 decision. AT 145-148. The Appeals Council also remanded plaintiff's SSI claim to the ALJ for a new hearing, further development of the record, and a new decision. AT 148.

On remand, in a decision dated September 8, 2014, the ALJ again found plaintiff not disabled. AT 14-41. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since April 26, 2011, the application date.
>
> 2. The claimant has the following severe impairment: borderline intellectual functioning. The claimant has the following medically

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> determinable impairments that are not severe: depression, anxiety and obesity.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand, remember and carry out no more than one to two step job instructions but can maintain concentration, persistence and pace for simple job tasks and can interact appropriately with supervisors, coworkers and the public.
>
> 5. The claimant is unable to perform any past relevant work.
>
> 6. The claimant was born on October 15, 1992 and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
>
> 7. The claimant has at least a high-school education and is able to communicate in English.
>
> 8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since April 26, 2011, the date the application was filed.

AT 22-41.

## ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in finding that plaintiff did not have a presumptively disabling impairment, as she improperly evaluated the medical evidence; and (2) the ALJ failed to base her step five finding on the correct hypothetical limitations.

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Presumptively Disabling Impairment

Plaintiff states his claim in terms of the ALJ's improper rejection of certain medical evidence. However, he essentially contends that the ALJ erred in her step three finding that plaintiff did not meet Listing 12.05C and therefore was not presumptively disabled. Plaintiff takes issue with the ALJ's reliance on the medical opinions of Dr. Finkel and Dr. Walter in reaching this conclusion. Specifically, he argues that the ALJ "should not have relied on Dr. Finkel's report as it was done in the absence of treating records and should not have relied upon Dr. Walter's testimony as he repeatedly contradicts himself." (ECF No. 20-1 at 13.)

The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person from performing

gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). It is the disability claimant's burden of proving that his or her impairments meet or equal the required elements of a Listing. Tackett v. Apfel, 180 F. 3d 1094, 1099 (9th Cir. 1999).

To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526. A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3).

The Listings under 12.05 describe intellectual disabilities consisting of a "significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," i.e. the onset of the impairment occurred before the individual was age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. The manifested deficit in adaptive functioning is a prerequisite that must be met by Listings 12.05A-D, along with the individual requirements for each subdivision. Listing 12.05C requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Plaintiff cites his severe depression as a mental impairment under Listing 12.05(C).

In her step three analysis, the ALJ noted that plaintiff "had been diagnosed with cognitive problems at an early age"; however, the record "also shows that he has dealt with his cognitive problems without much medical treatment." AT 23. In the absence of regular mental health records, the ALJ gave "much consideration" to consultative psychological evaluations in order to determine the severity of plaintiff's problems. AT 24. Dr. Barry Finkel conducted one such evaluation of plaintiff in June 2011, administering a battery of psychological tests and an IQ test. AT 24. He determined that plaintiff had an IQ of 69, found him polite and cooperative, and

diagnosed him with Borderline Intellectual Functioning at Axis II. AT 24.

As to plaintiff's depression, the ALJ cited Dr. Finkel's report as follows:

> With respect to whether the claimant has depression that is severe, the undersigned gives much weight to Dr. Finkel's evaluation in determining that the claimant does not have depression that is severe within the meaning of applicable regulations and rulings. As noted above, Dr. Finkel diagnosed the claimant with only borderline intellectual functioning at Axis II with 'no diagnosis or condition' at Axis I. The claimant reported some feelings of sadness and worry about his financial situation, and he noted that he could be down for a day or two, but he also said that he feels better once he goes to the gym and works out. The undersigned also notes that Dr. Finkel specifically reported that the claimant denied neurovegetative signs of depression, and that he had no mental health history.

AT 26.

Dr. Sydney Walter testified at the hearing based on a review of plaintiff's medical record, including plaintiff's 2011 evaluation by Dr. Finkel, his 2014 psychological evaluation by Dr. Deborah Schmidt, and his 2012 and 2013 treatment reports with Dr. Daniel McCrimons. AT 59-70. In her step three analysis, the ALJ gave "much weight" to Dr. Walter's testimony. AT 33. Per the ALJ's summary, Dr. Walter testified that plaintiff's "symptoms of depression and anxiety, particularly his lack of motivation, were associated more with his low IQ and underlying diagnosis of borderline intellectual functioning and that his depression and anxiety were otherwise mild." AT 27. As to step three, "Dr. Walter indicated that the record does not support a finding that the severity of the claimant's condition reached a listing level." AT 33.

Plaintiff argues that Dr. Finkel's and Dr. Walter's conclusions were flawed for various reasons. However, defendant argues that, as a threshold matter, plaintiff has not met his burden to establish that he met the criteria of Listing 12.05(C) or any other sub-part of Listing 12.05. In other words, defendant contends, plaintiff has not shown "significantly subaverage general intellectual functioning with deficits in adaptive functioning" that manifested before he turned twenty-two. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.

Defendant points to record evidence of plaintiff's "capacity to engage in a wide range of daily activities and appropriately fulfill his work responsibilities at Pride Industries," a training environment for the developmentally disabled, where plaintiff worked beginning in 2012. Citing

plaintiff's work history and medical evidence of mild or moderate (as opposed to severe) depression, defendant argues that plaintiff cannot satisfy the Listing 12.05 criteria.

As noted by the ALJ, plaintiff's case manager at Pride Industries

> advised that the claimant was able to work in small or large groups, that he adjusted well to changes in his daily routine, work environment or supervisor without difficulty, and that he could happily speak with others when spoken to first. The case manager also noted that . . . the claimant could correctly follow instructions once he was trained on specific jobs, that he kept his work area neat and organized, that he followed safety policies and showed excellent grooming and hygiene, that he did his best to show a good attitude even when things in his life were not going well, that he never argued or complained with staff, and that he could independently care for his personal needs.

AT 26. Plaintiff worked at Pride Industries for two years cleaning floors. He took the bus to work and worked with around fifty other people. AT 26. Plaintiff also testified that he missed work a lot due to stress and depression. AT 26. At the time of the hearing, plaintiff was on leave from his job, as he had started arguments with coworkers during a month when he was angry and sad. AT 50-51.

Dr. McCrimon's treatment records also shed light on plaintiff's mental health and ability to function in a work setting. Dr. McCrimon diagnosed plaintiff with depression in 2012 and prescribed Prozac, but noted in follow-up visits that plaintiff's depressive symptoms were moderate and "relieved by medication." AT 26-27, 437-438. In follow-up visits in 2012 and 2013, plaintiff's behavior and affect were normal, and he showed no signs of anhedonia, agitation, hallucinations, paranoia, or suicidal ideation. (AT 323, 325, 425),

In Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013), the Ninth Circuit held that a plaintiff who challenged an ALJ's step three finding "was required to demonstrate that he medically equaled each of the individual criteria under Listing 12.05C and failed to do so." In that case, "the ALJ adequately addressed the third step of the evaluation . . . [and] appropriately addressed the issues that [the claimant] raised and determined that [the claimant] did not meet or equal any listing." Id. Similarly here, the undersigned concludes that the ALJ's step three determination is supported by substantial evidence in the record as a whole, and that plaintiff has not shown a presumptively disabling impairment.

B. Hypothetical Limitations

Plaintiff next claims that the ALJ's hypothetical questions to vocational expert David Dettmer did not include all plaintiff's impairments as reflected in the record.

"At Step Five . . . , the Commissioner bears the burden of proving that the claimant can perform other jobs that exist in substantial numbers in the national economy. 20 C.F.R. § 416.920(f). There are two ways for the Commissioner to meet this burden: (1) by the testimony of a vocational expert or (2) by reference to the grids." Bruton v. Massanari, 268 F.3d 824, 828 n.1 (9th Cir. 2001) (internal citations omitted). In this case, the Commissioner employed the testimony of a vocational expert. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Dettmer testified that a person who could understand, remember, and carry out simple one-to-two-step job instructions; could maintain concentration, persistence and pace for simple job tasks; and could interact appropriately with supervisors, coworkers and the public, could work in production assembly as an agricultural sorter, for example. AT 25-26. The ALJ questioned him as follows:

> Q: And if I add absences once per week, would such an individual be retained in any of those jobs?
>
> A: They would not be retained, particularly in those sorts of entry-level jobs where people are easy replaced[.]

AT 97. Questioned by plaintiff's attorney, Dettmer further testified that, if the claimant also required "a supervisor to remind them to stay on task twice an hour," he likely would not be employable. AT 97.

Plaintiff argues the ALJ should have relied on certain records that showed these last two hypotheticals applied to plaintiff and, as a result, no jobs were available for him. However, the hypothetical that ultimately served as the basis for the ALJ's determination was based on plaintiff's "identical vocational background and residual functional capacity[.]"[2] AT 40. Plaintiff does not dispute the ALJ's RFC finding.

Plaintiff cites records from Alta California Regional Center, which evaluated plaintiff in 2013, and his employer Pride Industries, as support for the contention that plaintiff required a job that allowed him to be absent once a week and a supervisor who reminded him twice an hour to stay on task. Alta's report stated : "Due to his disruptive social behaviors, emotional outbursts and work ethics, Joseph is not ready for off site employment opportunities." AT 429. The report noted that plaintiff "struggles with attendance," and that his productivity at Pride was 55%. AT 429. However, his case manager "noticed a positive difference at work" when plaintiff was "taking medication for his moods." AT 429.

Following a largely positive summary of plaintiff's history at Pride (noted above), the ALJ stated that she "also recognizes that the claimant testified at the initial hearing that he missed work a lot due to stress and depression." AT 25-26. A December 2012 record of plaintiff's attendance at Pride between November 2011 and November 2012 shows it ranging between 31% and 77%. AT 327. At the hearing, Dr. Walter opined that, based on his review of the record, plaintiff was "capable of simple work but has a serious problem in work ethics and responsibility. . . . I think the main problem is he doesn't feel like attending, he doesn't, and the structural work rules, he seems to disregard." AT 60. Asked if he had a "diagnosis" based on the record, Dr. Walter testified: "Well, there is no diagnosis for someone who's indifferent to work . . . but it can probably fall into a personality problem. But there's no objective diagnosis for that." RT 60-61.

Based on the foregoing, the undersigned finds that hypothetical that ultimately served as the basis for the ALJ's determination was supported by substantial evidence in the record as a

[2] In the step four RFC finding, the ALJ found that plaintiff was "able to understand, remember and carry out no more than one to two step job instructions but can maintain concentration, persistence and pace for simple job tasks and can interact appropriately with supervisors, coworkers, and the public." AT 34.

whole.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 23 is granted; and

3. Judgment is entered for the Commissioner.

Dated: July 27, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / castillo0953.ssi.ckd